The next argument is in Gemtron v. Saint-Gobain, Appeal 1001 from the current year. Good morning, Your Honor. Following the court's question, where is the reversible error? The reversible error with respect to non-infringement in this case has to do with trying to prove infringement by testing something other than the accused product. The accused product is the Saint-Gobain shelf, and that's right here. We brought it in just to show the resilient fingers or the fingers that you see mentioned in the brief. In the shelf are here, here, and this long one here, and that's what they're talking about. That's what Gemtron accuses as fingers. The Gemtron invention, in order to determine infringement, you of course have to go on the basis of what's in the patent and how the claims relate to the specification. The Gemtron invention was to make a low-cost refrigerator shelf. They wanted to make it of just two pieces, and they just wanted to join those two pieces with no other piece. The way they did that was they said, I'm going to use a regular frame, plastic frame, thermoplastic frame, and use a regular piece of glass like they've been made before, but they said, what we're going to do is we're going to put in resilient fingers, and that would be one here, one here, maybe one or two here, one or two here, one or two there. The way they make the frame, the way they make the shelf, is if you would picture the frame right here, and this comes from figure eight of the patent, and it's described in columns five and six. If you picture the frame here, and it's got an opening here, the glass is yet to be inserted, the glass is down here. The glass then comes up, and it comes up in a perpendicular to the plane of the frame, and when it hits the opening, it hits these resilient fingers, and it can't go any further, but since the fingers are resilient, it can push right through them. So the finger, if this is the finger, here's the frame, the fingers go like this. They come up as the glass comes up, and when the glass passes, they come back down again. That's an easy way to get the glass in the frame. Mr. Neustadt, how is your client's structure assembled? Your client's structure is also a two-component structure with glass and a plastic frame, correct? We use a heat shrink process. The heat shrink process involves taking a frame that comes from an injection molder, taking it out, because it's got a larger opening there, you can then put the glass in it, then the frame cools. When it cools, it locks in the glass. The frame is not resiliently flexed to snap over the glass? No. It's a larger opening. You do have to get the glass in the glass receiving channel, but you aren't doing any flexing like this. Then when it locks tight as it cools, and this is all done in Mexico, and Gemtron says they're not asserting infringement in Mexico, locks tight, and as brought into the United States, it's completely solid. There's no resiliency at all to the fingers. The video that I looked at seemed to show some flexing. There was, while the frame was still warm enough to bend, the glass was slid in to part of it and then snapped in at the other end. What you saw was twisting. You would take the frame and you would twist it like this. That's not flexible fingers. That's just twisting it so you can get the glass in the glass receiving channel. You're not deflecting anything like that. Of course, you have a product claim here. When you twist something, you're deflecting it. No, the deflection has to do with the glass deflecting it. Here, you don't deflect it, you just flip it to open the receiving channel so that the glass can go into it. The receiving channel is like this. In the patented invention, you have to bend it. In our invention, it can say the same because if you flip it that way, it just goes right in. Then ours cools down, and when it cools down, it's solid. There's no dispute about that. Even Judge Miles held that. The claim is a product claim. Gemtron, as we said in our brief, told Judge Miles that this is not a product by process claim. It is a product claim. Since the manufacture took place in Mexico, Gemtron agrees that they say they don't assert infringement in Mexico. You have to look at the shelf as it comes into the United States. As it comes into the United States, it is completely cooled down, it is completely rigid. The Gemtron shelf... There is no temperature component in the claim. Well, depending upon whether or not you want to call it, there really is. The claim talks about a relatively resilient finger, and this relatively resilient finger refers to the relatively resilient finger as it normally exists in the United States, as our, what they call fingers, exist in the United States. But isn't the importance that it's relatively resilient so as to permit the two to be connected together, snapped together? Well, the patent tells us that that relative resilience occurs over the entire time that you have the finger. Why do you say that? I don't see that at all. The patent says that you get the benefit of being able to put the glass in the frame by the resilient fingers, but that the fingers remain resilient so that when you put the refrigerator shelf in the refrigerator compartment, you have to be careful because they're still resilient and they will not support a load. But there's nothing in the claim that says it must remain resilient. In fact, quite the contrary, it says it's temporarily resilient. No, no, the claim says that it's a relatively resilient finger. It says the lower wall, including a relatively resilient end portion. Yeah, which temporarily... Yeah, it says this is one of its characteristics. One of its characteristics is that it can temporarily deflect when you're putting it in. But the... Structural characteristics. It's just a structural characteristic. The question I have is why is it wrong to conclude that the accused structure has that same structural characteristic if in fact the glass and the plastic are assembled together in that manner? In the United States where you're looking at infringement, it's undisputed that it doesn't have that characteristic, that it's rock solid, that it isn't resilient anymore. That's the characteristic that allows it to exist in the United States in its combined form. Well, then you're making it into a product by process claim. The claim is a product claim and the claim says that the finger is relatively resilient. And in the United States, it's not relatively resilient and there isn't any dispute that as the shelf normally exists in the United States, whether it be at ambient temperature or whether it be in a chilled refrigerator compartment, there is no relatively resilience. And that's why the patentee says in the application, he says be sure that you make sure that you take into account that it's still relatively resilient in the refrigerator compartment and therefore you have to use ribs or ledges to make sure that food loading doesn't force the glass out of the frame. What if you had a product that was claimed as a two-component structure that is snap-fit together? Yes. Would it matter for infringement purposes if that assembly took place outside the United States and the product was sold in the United States, the product that was snap-fit together? Well, it depends upon what the claim says. This claim says that it is relatively resilient finger here and that is a claim requirement. And that claim requirement is not met by the Saint-Gobain shelf because it doesn't have a relatively resilient finger. And therefore, when Gemtron had to test for infringement, since they knew it was not relatively resilient, they said, well, we're going to raise the temperature. We're going to raise the temperature. We're going to double it to 150 degrees Fahrenheit. This is then going to make this frame more malleable. We can then push the glass out of the frame and say, oh, we've got infringement. But the accused product is never subjected to that in the United States. Saint-Gobain doesn't have its customers heat the refrigerator shelves in an oven. And in fact, there was no dispute from either Gemtron or Judge Miles that in the United States, these what you call fingers are not resilient at all. They will not conform to what is required by the claim. And as a result, when it came time for Gemtron to prove infringement, it couldn't use the accused product. It had to change the accused product by heating it up to 150 degrees Fahrenheit and then say, oh, now I can get it in and out. But how can they accuse Saint-Gobain of doing something wrong when Judge Miles and Gemtron say at normal temperatures in the refrigerator, there's no infringement? Now, what are we to make in the patent, all of the references in the background of the invention and also in the brief summary of the invention that could give you the columns and line numbers, you probably know them well, but seem to focus on, in terms of this aspect of the invention, assembly and manufacturing. I mean, isn't this really, isn't what's really being claimed here a refrigerator shelf that has as one of its characteristics, the characteristic of being flexible at the time of manufacture to enable glass to be easily inserted into the frame? Well, now you're talking about really a product by process claim and Gemtron specifically said that... Well, we have to interpret the claim, though, I mean... But you can't interpret it as a product by process claim, as I hear you saying, because we try... But I don't know, is that, is what I just said a product by process claim? Yeah, you're claiming the product by the process by which it was made. And here's what... Well, isn't it reasonable to say, no, it's not a product by process claim, it's an apparatus claim which has certain characteristics. Just like any other kind of mechanical device, it's got a gear and a lever and it's got something, a flexible thing and a rigid thing and it's connected together. That's exactly what this is. All of this took place in Mexico and it is a product by process claim. They told Judge Miles that this was not a product by process claim. We tried the case on that entire basis and for the court to now turn around and change it into a product by process claim is highly prejudicial to... Why do you keep saying that... We're assuming it's a product by process claim. We all agree that it's a product claim with one very unusual limitation in it, which the district court construed as being applicable as of the time of assembly. Obviously, you disagree with that, but it's not clear why that's a illogical reading because the limitation deals with assembly. You're talking about defining the refrigerator shelf by the process by which it was made. You've got a product claim... No, you're just saying that the resiliency had to exist at the time of assembly, not necessarily later. That doesn't turn it into a product by process claim. I can't agree with you on that. A product by process claim only covers things made by a whole series of process steps. That's the definition of the product. Here, the definition of the product is 90% structural and 10% structural as assembled. First of all, I don't want to argue with you. The other thing about this is it's used to make a completely different product. The product of the patent has relatively resilient fingers at ambient temperature when it is being used. That's why you have to support those fingers in the refrigerator shelf. The Saint-Gobain shelf is the opposite of that shelf. It's made by a different process, but most importantly, in the United States, where you have to determine whether or not there is infringement, there is no finger that you can call resilient. The Judge Miles said that Saint-Gobain has proven non-infringement for a shelf at ambient temperature and a shelf as used in the refrigerator, the chilled refrigerator compartment. What do you have to do if you want to clean the glass in your client's shelf? Is there any way you can take it out? Oh, sure. You just slide it, they slide them out. No, I mean, I don't mean the whole shelf. I mean, say I take this, yeah, obviously, you can take the shelf out of the refrigerator. Say I take the shelf out of the refrigerator. Is the only way, and say there's food debris on the glass, is the only way I can clean that debris off the glass by cleaning it in the frame, or can I take the glass out of the frame? The glass does not come out of the frame. No way you can get it out. So, GEMFRON, they can't test our shelf. We've got our shelf, it's here. If you're going to test for infringement, presumably they would test that. And they didn't test that. They heat it up until they can get it, until it's soft enough, and then they say, voila, that's infringement. Well, the function of a claim is to particularly point out and distinctly claim the invention. The claim doesn't say, doesn't tell you you can alter an accused product. So that's not even a feature of patent law. It's like comparing apples and oranges. And then they said that GEMFRON had the, that Single Bain had the responsibility of proving infringement every single temperature, no matter how the shelf is used. And that's a wrong statement of patent law. They have to prove infringement at the temperature at which the shelf normally exists, and that they couldn't do. And as a result, they change the accused product. There's never any justification for changing the accused product, because they're the ones who changed it. And unchanged, they said there was no infringement. All right, time has long since expired. We'll let you have two minutes for rebuttal, and we'll hear now from Mr. DeBruyne. Thank you, Your Honor. Thank you, Your Honor. Single Bain talks a lot about infringement and changing product to test for infringement. But you can't talk about infringement without first understanding what the claim means and understanding how the claim must be construed. Each ruling that Single Bain challenges on this appeal is, in fact, an indirect challenge to the claim construction below. What's wrong with that? Well, Your Honor, the determination of infringement is a matter of fact. Claim construction is done by reference to looking at the claims, looking at the specification. You might guess we're aware of that. I'm sorry? You might guess we're quite aware of that. Well, I appreciate that. But my point is there are different analyses. And so the question becomes, first, what is the claim construction that we're trying to address in our infringement analysis? And his argument is based on the premise that Judge Miles' construction of this limitation was wrong. And I don't understand why he's not permitted to do that. There's no waiver here. No, I'm not suggesting that, Your Honor. So he's attacking the claim construction because it's the foundation for the test. Well, Your Honor. And if he's correct, then he should win. If he's not correct about the claim construction, then I would think he would lose. So he should be talking about the correctness of the claim construction because it's the foundation of his attack. Well, I agree that the claim construction is the core issue here. But I would submit that it is not the foundation of the attack by Saint-Gobain. In fact, Saint-Gobain's brief doesn't hardly address claim construction. You don't even find the claim construction in order in the addendum to their brief. Well, let me ask you. You heard all three members of the panel engage in some colloquy with Mr. Neustadt. And in one way or another, we each seem to say, isn't this a claim to an apparatus that, by the way, has the feature at the time of insertion of the glass into the frame of having flexible tabs to facilitate the insertion? That's correct. I think that's what we all were. Some of us said it better than others. But that was what we were all sort of groping for, I think. Do you agree? I agree that that's the question. Now, is that a correct construction? Yes. The claim construction was absolutely correct in view of the- No, I'm talking about the construction that we've been articulating, that the panel's been articulating. Oh, in terms of at the time of insertion. Yeah. The court below said that the characteristic of relative resilience, first of all, it's relative resilience, not just being resilient. But it is such that it can temporarily deflect and subsequently rebound when glass is being inserted into the frame. What that indicates is that you look at the point where the glass is designed to be fitted into the frame. And if indeed the fingers, just to be clear, the fingers that are at issue in this particular claim are the front and back fingers, and only those. The fingers need to be relatively resilient such that they can temporarily deflect and subsequently rebound when the glass is being inserted into the frame. Now, St. Gobain decided, as a matter of design choice, to insert- Wait a second. Before you go any further, the claim language doesn't say anything about the time of assembly. It doesn't talk about the time of being inserted. The claim language itself does not include- Well, that's what we're talking about, claim language. Well, I'm talking about the construction that the court gave it, Your Honor. But the claim language doesn't have anything in it about assembly, or when being inserted, or any such language at all. That's true that that language is not expressed in the claim. However, the court looked at the claim language and said that the fingers temporarily deflect and subsequently rebound to snap secure, and said that what that relates to is the process that is described really throughout. Yes, that's exactly what the court said. And that's what Mr. Newstadt said. And it's exactly wrong. He said the claim language requires present tense, here, now, in the refrigerator, in the United States. Now, maybe he isn't right, but you have to help us understand why he isn't right, or maybe he is right. That's the issue. It does maintain that characteristic in the United States. There's no question about that. Mr. Miedema was able to replicate the conditions when this piece of glass- No, no, no. I think the chief will correct me if I'm wrong. But he was asking, maybe, about the claim construction. I mean, correct me? Someone will correct me if I'm wrong, I'm sure. But as I understood, Mr. Newstadt was saying, under the claim, the claimed invention, the flexibility feature that's recited at the end of Claim 23 is present at construction and at all times thereafter, when it's in the refrigerator. And he's saying, well, yeah, you heat it up, we have this heat process when we're manufactured, but we're rigid and not flexible when we're in the refrigerator. So in the claim, does the flexibility feature  is in the refrigerator? I want to be careful not to confuse the infringement analysis and the claim construction analysis. The first question is, how does the language in the claim get construed? We agree that the relative resilience, which is a little bit different from the concept of flexibility, the relative resilience has to be present at all times and is indeed present at all times in these fingers. No, no. What about in the claim? Does the claim speak to relative resiliency being present while the finished product, the frame with the glass in it, is sitting in the shelf in the refrigerator? The answer to that is yes. These fingers, as we sit here today, have that characteristic. But is that characteristic claimed? In other words, does your claim, Claim 23, when I read Claim 23 and it says relatively resilient end-edge portions, are those relatively resilient end-edge portions in the refrigerator? Not talking about the accused device, but is it claiming relatively resilient end-edge portions of a shelf in the refrigerator? No, it is a feature of the shelf. It has nothing to do with what refrigerator compartment you put these in. Well, no. I'm addressing your question. But is the claim directed to a shelf that has relative resiliency when it's in the refrigerator? It has the characteristic of relative resiliency, but you have to then ask yourself the question, what does it mean to be relatively, well, what does it mean to be relatively resilient under the claim? I would have thought you would have said that relative resiliency only refers to the time when it's being inserted. And it only gets inserted when it's manufactured, so it doesn't matter. Well, that is one time that it gets inserted. The claim construction requires that to assess relative resilience, you look at the circumstances when the glass is being inserted into the shelf. Maybe I could, that's the question. Let me see if I, I'll try a different angle. In the invention, is the frame made of a resilient plastic or a rigid plastic material? Well, it can be made of a number of different plastics, but the key to the resiliency is these particular end-edge portions. Just answer my question. Is it resilient plastic or rigid plastic? It is a plastic from which you can make relatively resilient end-edge portions. I'm not trying to avoid your question, but the... I don't think I'm doing any better than Judge Shaw. I'm not getting an answer. Let me ask you, if I walk up to you and I say, oh, I see you have this patent, okay, are you claiming flexibility when the shelf is sitting in the refrigerator? Again, I have to emphasize the difference between flexibility and resilience. All right, well, resilience... Well, a railroad rail, for example... It goes back a little bit. ...is not flexible, but it is resilient if you watch it as a train goes over it. So, well... What I'm trying to get at is that timing seems to be important here. Maybe I'm missing something, but is your... Is the claimed device... Is the claim to something that's resilient when it's sitting in the refrigerator or without anything being put into it, or is it only resilient when somebody tries to put something in it? But it's manufactured. It is relatively resilient as it sits in the refrigerator. That's what's claimed. Pardon? That's what's claimed. Yes, but you have to, again, go back... Pick up that, because I'm not... If it's... In other words, the claim is to something that is relatively resilient in the refrigerator. That means it's got a little bit of flex, right? Well, that doesn't mean you test it under cold conditions. There's a difference between whether something maintains the characteristic. This has the characteristic of having been snapped secure. And what the court said, because these dimensions change based on temperature and so forth, and the patent talks... The specification of the patent talks a great deal about the dimensions having to be appropriate for this to work. And so what the court said is that we assess this when the glass can go into the frame. And certainly, in manufacture, is when that typically occurs. But it can be replicated. It is a characteristic of the fingers that they do not lose. They maintain that characteristic in the United States. And so... You're saying that's what's claimed? That's correct. And that's the construction that the lower court did. But if it's flexible in the refrigerator, in its in-situ state, or if I take it out of the refrigerator, put it on the counter maybe to clean it or something, it still has to be flexible then? Again, Your Honor, I have to be clear on the words here. The claim requires not just resilience, but relative resilience. Flexibility is not in that claim. Okay, relative resilience then. Okay, but relative resilience is a term of art as used in the claim. It is not simply resilience. It is not resilience at every temperature. It is resilient at the time when the glass, by design, goes into the frame. In the case of St. Gobain, they have designed their shelf... Then you're only claiming when it goes into the frame. That is how you determine whether the characteristic of relative resilience is present. So it's correct to say then you're claiming the shelf that has as its feature flexibility at the time of construction. Your Honor, the word flexibility is not... Or resilience. Relative resilience at the time of construction. At the time when the glass goes in the frame. That's what the construction was. It only goes in the frame once. By design, that's true. Now, you can test whether that characteristic is present by replicating that. But like Mr. Neustadt was saying, nobody's going to be taking these things in and out. Correct. And that would be the same with the invention, right? That's true. I'm very puzzled. You seem to be disowning the claim construction that you got from the district judge. Not at all. What I'm trying to distinguish is the saying that we look only to the time of its original manufacturer versus whether it is a characteristic that can be repeated. I thought that the district judge in effect said you only look at the time of manufacture and assembly for purpose of the one disputed claim limitation. And you're now saying that no, that was wrong. What he should have said is at that time and any later time, provided that you could apply heat. Maybe I can explain. So you are trying to walk away from the claim construction as worded by the district judge, which is a very unusual position for an appellee. Usually the appellee is saying the district judge got it exactly right and the appellant is saying no, the district judge got it backwards. Your Honor, he did. This is a very bizarre circumstance. No, if there's any suggestion, I am saying that the district court had the wrong construction. Let me make clear. I think he got the right construction. He's got it exactly right. But incomplete. He needed to go on and say, or any time later. Not just the time of original assembly, but any time later. But he didn't. Now the time, the phrase that the court used was that you assess the characteristic of relative resilience of these fingers when the glass goes in the frame. Now that certainly happens at the time of assembly. And that only happens once. It is by design intended to happen only once. That's correct. So we are not in any way walking away from that construction. And that's really what this whole patent was about. As even Mr. Neustadt acknowledged when he got up, the idea of this was to come up with a construction, a two-piece design that could be easily assembled. And that's really the focus of the patent. The attack, if you will, on the claim construction is really one that says that this shelf has to be by design something that falls apart under normal use. And that is what is unfounded. The only claim construction that Saint-Gobain ever cited below was a construction that would permit this glass to be pushed out and essentially would require that the glass fall apart under normal use. And that finds no support in the specification. I wasn't trying to drive you away from the exhibit there. It was just that I wanted to try and focus on the claim construction issue. Well, exactly the point. In fact, if you look even at the testimony from Saint-Gobain's expert, Mr. Stoll, he agreed that in questioning from the judge that the claim is not to a shelf that falls apart. And I would direct your attention to his testimony that's cited at A1144. So, the Saint-Gobain does not seriously challenge the construction here. I see that I'm apparently over time. So, unless the court has further questions, I'll end it with that. Thank you. Thank you, Your Honor. You have two minutes. Yes, Your Honor. Basically, he's just saying when he says it's relatively resilient in the refrigerator, everyone agrees that the Saint-Gobain shelf is not relatively resilient in the refrigerator. So, therefore, there would be non-infringement. If at page 47 of their brief, they say, Gemtron did not argue, has never argued that the manufacturing process in Mexico constitutes infringement. So, he's saying that isn't infringement. You're making a completely different shelf. And what he is saying now, of course, relates to, in a state within my time limit, the obvious, where they started talking about whether or not it supported the load. And if he's saying now that it doesn't even have to support a load, and it's just putting a plastic frame into a piece of glass, how could that be non-obvious, especially when their experts said, well, of course, the glass is old, the frame is old, and the snap fit is old. And then his only quibble was, he says, well, that wouldn't support a load. Well, that would support a load. And the patent said, well, no, it won't support a load. You have to move, you have to use ledges and ribs. You're looking at a case where the patent says nothing at all about heat. The patent says I'm using relative resiliency to get this in, and then I'm supporting it in the refrigerator. And then you have an accused product that has none of that. It's completely solid. And he says, well, it was resilient in Mexico. Well, then he says, but I'm not asserting infringement in Mexico. And you can't get infringement in Mexico because it's outside of the United States. So, how can you find infringement of something that's just the opposite of the shelf that's claimed, which is one with resilient fingers? Because obviously anyone, if they want to join a plastic frame to a piece of glass, they can just go ahead and do it. The problem is in the shelf, in the refrigerator, it has to be supported. So, you have to look at this from, well, why are you changing the accused product to try to find infringement? You normally test the accused product as it is. You don't change it. He says it infringes because I changed it so it infringes. And the judge agreed that at every point in time where this shelf is in existence, there is no infringement. This is at page A303. Judge Miles says that, well, you've shown non-infringement at all of these temperatures. It's just that you haven't shown infringement at the temperature where Gemtron chooses to heat it when it's never heated there. And then if you say Mexico, Mexico's outside the U.S. The court may sit over there.